**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JAMES A. BRIGMAN,           *
                                *
     Plaintiff,         *
                                *
vs.                    *     CIVIL ACTION 11-00470-KD-B
                                *
GREAT AMERICAN OPPORTUNITIES,  *
INC.,                  *
                                *
     Defendant.        *

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Great American Opportunities, Inc.'s Motion to Dismiss, to Abstain from Consideration of this Case, or to Transfer Venue to the Middle District of Tennessee and supporting memorandums. (Docs. 6, 7, 19). Defendant's motion has been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Based upon a careful review of Defendant's motion and supporting memorandums and Plaintiff's brief in opposition (Doc. 14), the undersigned RECOMMENDS that Defendant's motion be denied to the extent that it seeks dismissal or abstention, and that it be granted to the extent it seeks the transfer of this action to the Middle District of Tennessee.

## I. Factual Background and Procedural History

Plaintiff James A. Brigman ("Brigman" or "Plaintiff") was hired by Defendant Great American Opportunities ("Great American" or "Defendant") in February 2003 to work in its school fundraising business and was assigned to various counties in North Carolina. (Doc. 1 at 1, Doc. 7). Plaintiff, who previously resided in North Carolina, resided in Mobile County, Alabama at the time this action was filed, and is a current resident of Alabama. (Doc. 1). Defendant is a Tennessee corporation headquartered in Nashville, Tennessee. (Doc. 1). During his employment with Defendant, Brigman would occasionally travel to Tennessee at Defendant's request; however, he only serviced customers in North Carolina. (Doc. 7 at 2; Doc. 14-1, Plaintiff's Aff.).

At the time of his hiring, Plaintiff signed an Employment Agreement ("the Agreement"), which included a Compensation Schedule and Sales Representative's Pay Plan. (Doc. 7-4 at 14-23). Plaintiff was compensated according to a Compensation Schedule, which included an unguaranteed draw against earned commissions that became operative after two years of employment, or beginning in 2005. (Id. at 4). Also, as part of his employment, Plaintiff was provided an "8000 account," for business related expenses.

On March 2, 2011, Plaintiff resigned his employment with Great American, and on August 15, 2011, he filed the instant

lawsuit. (Doc. 1). In the instant action, Plaintiff contends that when he was being recruited by Great American, various employees of the company made fraudulent misrepresentations to him in order to induce him to enter employment with Defendant. Specifically, Plaintiff alleges that he was advised that he "would never have to worry about being charged expenses for the Defendant's '8000' account and income overages," and that without his knowledge, Great American was secretly charging him for the expenses and overages despite the representations. (Doc. 1 at 2). Additionally, Plaintiff alleges that while employed with Great American, payroll deductions were made for the purchase of company stock, however, despite demands, Great American has failed to provide an accounting as to the value of said stock. Plaintiff has asserted claims for fraudulent misrepresentations with respect to the '8000' account, income overages and stock purchases, and claims for monies owned, including unpaid commissions, 401K benefits, bonuses, and the value of an all expense paid trip to Bermuda. Plaintiff also seeks a declaratory judgment that the charges accumulated by him on the '8000' account "are fraudulent and not owed to the Defendant." (Doc. 1).

Great American filed, on September 27, 2011, a motion to dismiss Plaintiff's complaint, to abstain from this case, or alternatively, to transfer this case to the Middle District of Tennessee. (Docs. 6, 7). In its motion, Great American asserts

that mere hours before the instant action was filed, it filed an action styled <u>Great American Opportunities, Inc. v. James A. Brigman</u>, Case No. 11-1117-IV ("the Tennessee action"), against Plaintiff on August 15, 2011 in Davidson County Chancery Court, located in Nashville, Tennessee. In the Tennessee action, Great American has asserted claims against Plaintiff Brigman for open accounts, and alleges that Brigman owes $91,707.92 on the overdraw account, and $130,666.61 on the '8000' account. Great American also alleges that Brigman's refusal to pay the amounts owing constitutes breach of contract. In the alternative, Great American has asserted a quantum merit claim to recover the value of goods and services provided to Brigman in connection with the Employment Agreement.

Great American alleges that the instant action is parallel to the Tennessee action because enforcement of the parties' Employment Agreement is at the heart of both actions. (Doc. 7).[1]

---

[1] Defendant has attached a copy of the Employment Agreement executed by Plaintiff and the complaint filed in the Tennessee action as exhibits. "[T]he Court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005). The Agreement is central to Plaintiff's claims and to the Court's consideration of the instant motion. Moreover, no party questions the Agreement's authenticity. Additionally, the undersigned may take judicial notice of certain facts and matters of public record, such as court orders and filings, without converting a motion to dismiss into a (Continued)

Great American argues that the parties' Agreement contains a choice of forum provision for dispute resolution, and per the written agreement, the Davidson County Chancery Court in Nashville, Tennessee is the proper forum for litigation under the contract. Thus, the instant action should be dismissed. Alternatively, Great American, relying on the Colorado River Doctrine, contends that this Court should abstain from consideration of Plaintiff's Complaint due to the parallel nature of the pending lawsuit and the Tennessee action. In the alternative, Defendant argues that this Court should transfer this case to the United States District Court for the Middle District of Tennessee based on the forum non conveniens doctrine.

In response, Plaintiff argues that nothing in the Agreement indicates that venue and jurisdiction is exclusively reserved in a Tennessee forum. (Doc. 14). In addition, Plaintiff contends that the claims in his Complaint fall outside the scope of the Agreement as there is nothing in the Agreement about the "8000

_____

motion for summary judgment for the purpose of recognizing the subject matter of the litigation. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999); Universal Express, Inc. v. United States SEC, 177 Fed. Appx. 52, 53-4 (11th Cir. 2006) (unpublished). Accordingly, the Court will consider the employment agreement and the Tennessee complaint. A review of the complaint in the Tennessee action reveals that Defendant has asserted claims for open account-overdraw, account, breach of contract, and quantum meruit. (Doc. 7-4).

account" or "income overages." He further contends that this case does not come within one of the rare exceptions recognized by Colorado River Doctrine as a basis for abstention, and that the Southern District of Alabama is not an inconvenient forum for Great American because it transacts business here. Thus, Plaintiff argues, Great American's motion should be denied in all respects.

## III. Discussion

### A. Forum Selection Clause

A motion to dismiss based on a forum selection clause is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3). See Lipcon v. Underwriters at Lloyd's, 148 F.3d 1285, 1290 (11th Cir. 1998). Forum selection clauses are characterized as either mandatory or permissive. A permissive clause permits jurisdiction in a particular forum but does not prohibit litigation elsewhere whereas "[a] mandatory clause ... dictates an exclusive forum for litigation under the contract." Slater v. Energy Servs. Group Int'l, 634 F.3d 1326, 1330 (11th Cir. 2011)(quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)). The Eleventh Circuit interprets forum selection clauses using general contract principles. Slater, 634 F.3d at 1230. "[W]hen ordinary contract principles fail to elucidate a single reasonable interpretation for an ambiguous provision, and instead the provision is 'subject to opposing, yet reasonable interpretation, an interpretation is preferred

which operates more strongly against the party from whom the words proceeded.'" <u>Global Satellite Commun. Co. v. Starmill U.K. LTD</u>, 378 F.3d 1269, 1271 (11th Cir. 2004) (quotation omitted); <u>Slater</u>, 634 F.3d at 1330("If no other contract principles point to a particular meaning, the court will prefer the reasonable interpretation that operates more strongly against the party who drafted the document."). The courts follow this principle whether evaluating language regarding the identification of a designated forum or language concerning the exclusivity of the designated forum.

The contract provision at issue in this case reads, in its entirety:

> 13. <u>Construction and Jurisdiction</u>. The parties acknowledge that this Agreement is made and entered in Nashville, Tennessee and will be interpreted and enforced in accordance with the laws of the State of Tennessee. Employee hereby consents to the venue and jurisdiction of the courts of competent jurisdiction, state and federal, situated in Nashville, Davidson County, Tennessee in any action brought in connection with this Agreement.

(Doc. 7-4).

In its motion to dismiss, Great American argues that pursuant to the parties' Agreement, it filed suit against Brigman in the Davidson County Chancery Court located in Nashville, Tennessee, and that by later filing the instant lawsuit in this Court, Plaintiff has violated the parties'

Agreement. (Doc. 7 at 4). Plaintiff, in his response in opposition, states that nothing in the above-mentioned paragraph indicates that venue and jurisdiction in Tennessee is exclusive such that litigation can only be brought in that jurisdiction. (Doc. 14 at 2). Plaintiff also alleges that nothing within the Agreement concerns the "8000 account" or "income overages" and that his claims "go[] much further" than simply claims asserted pursuant to the parties' Agreement. (Id. at 3). In other words, Plaintiff alleges that the Compensation Schedule and Pay Plan are not a part of the Agreement and that his claims for fraud and monies owed do not fall within the scope of the parties' Agreement. Both assertions are without merit.

The Eleventh Circuit has given broad interpretation to forum selection clauses. See, e.g. Stewart Org., Inc. v. Ricoh Corp., 810 F. 2d 1066, 1070 (11th Cir. 1987)(en banc), aff'd and remanded on other grounds, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (holding that the clause, which required parties to litigate "any case or controversy arising under or in connection with" their contract in New York encompassed both contract and tort claims); Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004)(forum selection clause not limited to claims that are dependent upon the agreement, but it encompasses "any lawsuit regarding th[is] [a]greement"); McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1307-08 (M.D. Ga. 2003)("all disputes arising under this

agreement" sufficiently broad to include tort claims and breach of implied warranty claims); <u>Stephens v. Entre Computer Ctrs., Inc.</u>, 696 F. Supp. 636, 638 (N.D. Ga. 1998) (clause in parties' agreement that referred to "any action" and which did not explicitly limit the actions to ones arising "under or in connection with the contract" was broad enough to encompass the plaintiff's fraud claims). <u>Cf.</u> <u>ADT Sec. Servs. v. Apex Alarm, LLC</u>, 430 F. Supp. 2d 1199, 1204 (D. Colo. 2006) (finding that non-contract claims involving the same operative facts as parallel breach of contract claims fall within the scope of a forum selection clause).

The undersigned finds that the Compensation Schedule and Sales Representative Pay Plan are encompassed with the parties' Agreement; thus, Plaintiff's claims relating to the Compensation Schedule and Sales Representative Pay Plan must be considered within the auspices of the Agreement[2]. Indeed, section 3(a) of

---

[2] The Compensation Schedule and Sales Representative Pay Plan attached to Defendant's motion is for the year 2010-2011. (Doc. 7-4 at 19-23). According to the complaint in the Tennessee action, the General Terms of the 2010-2011 Pay Plan are identical to the same General Terms contained in the Pay Plans applicable to the years 2005-2009, the years Plaintiff was subject to an unguaranteed draw. (<u>Id.</u> at 3). Plaintiff has not objected to Defendant's attaching of the Compensation Schedule for the year 2010-2011. Thus, for the purposes of this Report and Recommendation, the Court considers the 2010-2011 Compensation Schedule and Sales Representative Pay Plan to be the relevant Compensation Schedule and Sales Representative Pay Plan.

the parties' Agreement expressly incorporates the Compensation Schedule and states: "For all services rendered by Employee under this Agreement, Company shall compensate him/her in accordance with the Compensation Schedule which is attached hereto as Exhibit A, and which shall be deemed for all purposes to be an integral part of this Agreement." (Doc. 7-4 at 14). Section 3(b) further states that the Compensation Schedule "shall be considered a part of this Agreement." (Doc. 7-4 at 14).

In any event, even if the Compensation Schedule had not been expressly incorporated into the Agreement, the language "in any action brought in connection with this Agreement" is broad enough to include Plaintiff's fraud claims and is not merely limited to actions sounding in contract, as suggested by Plaintiff. The Eleventh Circuit has noted that "[c]ommercial contractual issues are commonly intertwined with claims in tort" and explained that a forum selection clause may apply to all causes of action arising directly or indirectly from the business relationship under the contract. Stewart Org., 810 F.2d at 1070. In fact, Plaintiff's claims for fraud in the inducement are based on his contention that he was deceived into entering into the employment contract; thus, his claims are sufficiently intertwined with the parties' Agreement.

Once it is determined that Plaintiff's claims are covered by the forum selection clause, the Court must consider whether

the forum selection clause is mandatory or permissive. This inquiry determines whether litigation under the Agreement must occur only in a Tennessee court or whether jurisdiction is merely permitted in that forum. See First State Bank of Northwest Ark. v. Ga. 4-S Invs., LLLP, 715 F. Supp. 2d 1301, 1304 (N.D. Ga. 2010). Plaintiff argues that nothing in the contract language indicates that venue and jurisdiction is exclusive to Tennessee, such that it precludes litigation in other jurisdictions. (Doc. 14 at 2). According to Plaintiff, the clause is permissive, and if Great American wanted jurisdiction in Tennessee to be exclusive, it would have provided for such in the Agreement. In contrast, Great American argues that the contract provision at issue is mandatory. Great American also argues that the forum provision should be enforced whether the Court determines the provision to be permissive or mandatory because Brigman admits that Great American's Tennessee lawsuit was filed first, and there is no dispute that the state court in Nashville was a proper forum in which to file. (Doc. 19 at 6-7).

In Keaty v. Freeport Indonesia, Inc., 503 F.2d 955 (5th Cir. 1974)[3], the plaintiff, a Louisiana resident, entered into an

---

[3] All cases decided by the United States Court of Appeals for the Fifth Circuit before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

employment contract with the defendant, a Delaware corporation
doing business in Louisiana. The employment contract specified
that "the parties submit to the jurisdiction of the courts of
New York." The district court dismissed the action on the ground
that the contract language required that suit be instituted in
New York. However, the Fifth Circuit reversed, holding that the
language was permissive rather than exclusive:

> We note initially that this is not a
> situation where the contract, on its face,
> clearly limits action thereunder to the
> courts of a specified locale... Neither is
> this a situation involving an adhesion
> contract whereby contract provisions are
> literally forced upon the weaker party...
> Instead we are confronted here with a
> negotiated contract provision subject to
> opposing, yet reasonable, interpretations.

Id. at 955.

Similarly in Citro Florida, Inc. v. Citrovale, S.A., 760
F.2d 1231, 1231–32 (11th Cir. 1985), the plaintiff Florida
corporation entered into a contract with a Brazilian corporation
in the business of processing citrus fruits. The plaintiff filed
a breach of contract claim against the Brazilian corporation. In
response, the defendant Brazilian corporation filed a motion to
dismiss based on, among other grounds, a forum selection clause
contained in the contract. The forum selection clause at issue
contained the following language: "Place of jurisdiction is Sao
Paulo/Brazil." In rejecting the district court's finding that

the clause was mandatory, the Eleventh Circuit determined that the clause was ambiguous concerning exclusivity because the clause did not clearly specify that "Sao Paulo" was the only place of jurisdiction and as a result, the ambiguity was to be construed against the drafter.

Though not identical, the language at issue in this case is analogous to the forum selection clauses in Keaty and Citro Florida. The clause in this case provides that the employee "consents to the venue and jurisdiction of the courts of competent jurisdiction, state and federal, situated in Nashville, Davidson County, Tennessee." There is no language indicating that the parties meant to foreclose litigation in other fora and that the state and federal courts in Nashville are entitled to exclusivity. Accordingly, the undersigned finds that the forum selection clause is permissive. See Stateline Power Corp. v. Kremer, 148 Fed. Appx. 770, 771 (11th Cir. 2005) (unpublished) (finding the language in the agreement providing that "the parties to this Agreement specifically consent to the jurisdiction of the courts of the State of Florida over any action" was ambiguous due to the lack of mandatory language to indicate that the parties meant to foreclose litigation anywhere else); First State Bank of Northwest Ark. v. Ga. 4-S Invs. LLLP, 715 F. Supp. 2d 1301, 1304 (N.D. Ga. 2010) ("Merely affirming that certain courts have jurisdiction does not, by itself,

indicate that no other court also has jurisdiction.").

Here, there is no dispute that Great American drafted the provision in question; thus, any ambiguity in the clause is properly construed against it. Amermed Corp. v. Disetronic Holding Ag, 6 F. Supp. 2d 1371, 1374 (N.D. Ga. 1998) ("Where a forum selection clause is ambiguous regarding exclusivity, it will be construed more strongly against the party who drafted the clause.")(citing Citro Florida, 760 F.2d at 1231-32; Zapata Marine Service v. O/Y Finnlines, Ltd., 571 F.2d 208, 209 (5th Cir. 1978) ("[W]hen a contract provision is subject to opposing, yet reasonable interpretation, an interpretation is preferred which operates more strongly against the party from whom the words proceeded."). Accordingly, the undersigned recommends that Defendant Great American's Motion to Dismiss for improper venue be denied because the forum selection clause contained in the parties' Agreement does not constitute a clear and exclusive provision. Therefore, Plaintiff is not prohibited from maintaining the instant suit before this Court.

Next, Great American argues that even if the Court determines that the forum selection clause in this case is permissive, this case should nevertheless be dismissed given the fact that the Tennessee action was filed first. Great American further contends that Plaintiff is still bound to proceed in the Tennessee forum as he is prevented from opposing Tennessee as a

forum and that is where the controversy arose. (Doc. 19 at 7-9). To the extent Great American is asserting the "first filed" rule as a basis for its motion, that rule applies to concurrent federal litigation not concurrent state and federal litigation. See, e.g., Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005)("Where two actions, involving overlapping issues, and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."); Allstate Ins. Co. v. Clohessy, 9 F. Supp. 2d 1314, 1315-16 (M.D. Fla. 1998). Thus, the motion to dismiss on that basis is due to be denied.

**B. Colorado River Abstention Doctrine**

**1. Parallel Actions**

As noted above, Great American contends that if the Court is not inclined to grant its motion based on the forum selection clause, the Court should abstain from exercising jurisdiction. As a general matter, federal courts have an "unflagging obligation ... to exercise the jurisdiction given them." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (internal citation omitted). Although, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," exceptional

circumstances may suggest the "wise judicial administration" of the federal court with concurrent jurisdiction dismiss its suit. Id. Before deciding whether abstention is appropriate, the court must first determine whether a state court action is parallel to the federal action. If the actions are parallel, the moving party has the burden of showing that "exceptional circumstances" exist justifying abstention. Jackson Hewitt, Inc. v. J2 Fin. Servs., 901 F. Supp. 1061 (E.D. Va. 1995).

In this case, the Court must first decide whether the Tennessee action and the instant federal action are in fact parallel. Proceedings need not involve exactly identical parties, issues, and requests for relief in order to be deemed parallel. Ambrosia Coal and Constr. Co. v. Pages Morales, 368 F.3d 1320, 1329 (11th Cir. 2004). Rather, the "Colorado River analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues." Id. at 1330; see also Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998) (finding two actions were parallel when "predicated on the same allegations as to the same material facts"); RepublicBank Dallas, Nat'l Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987) (observing that suits are parallel  if they "involv[e] the same parties and the same issues."). If the two cases are not parallel, the Colorado River doctrine does not apply. See AAR

_Int'l, Inc. v. Nimelias Enters. S.A._, 250 F.3d 510, 518 (7th Cir. 2001). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction . . . ." _Id._ at 520. Further, substantial similarity must exist between the state and federal proceedings, such that there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. _TruServ Corp. v. Flegles, Inc._, 419 F.3d 584, 592 (7th Cir. 2005).

Great American alleges that the Tennessee action and the present action are "mirror images of each other." (Doc. 7 at 7). Plaintiff does not dispute that the actions are parallel or substantially similar, but instead argues that no exceptional circumstances warranting abstention have been presented. As noted supra, in the Tennessee action, Great American has asserted claims for open account–overdraw, account, breach of contract, and quantum meruit and in this action, Plaintiff has asserted claims for "fraud in the inducement and breach of contract" and seeks declaratory relief. (Doc. 14 at 6). Upon review of the claims asserted, the undersigned finds that the Tennessee action is parallel to this action. Both actions involve the same parties, Brigman and Great American, arise from the same facts, and squarely revolve around the same Employment Agreement. Resolution of both cases will turn on the rights and

obligations between the parties under the Agreement. Thus, the actions are parallel.

### 2. Exceptional Circumstances

Where state and federal actions are determined to be parallel, the second step of the <u>Colorado River</u> analysis requires the defendant to show "exceptional circumstances" justifying abstention. <u>See</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In <u>Colorado River</u>, the Supreme Court set forth a list of factors to consider in determining whether exceptional circumstances exist, including: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." <u>Ambrosia Coal</u>, 368 F.3d at 1331 (<u>citing</u> <u>Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.</u>, 891 F.2d 882, 884 (11th Cir. 1990)); <u>see</u> <u>Transouth Fin. Corp. v. Bell</u>, 149 F.3d 1292, 1294-95 (11th Cir. 1998) In regards to weighing these factors, the courts have explained that "[n]o one factor is necessarily determinative," <u>Ambrosia Coal</u>, 368 F.3d at 1331-1332(quoting Colorado River, 424 U.S. at 818), and that '[t]he weight to be given to any one factor may vary greatly from case to case." <u>Id</u>. at 1332; <u>Moorer v. Demopolis</u>

Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004).

"Furthermore, the factors must be considered flexibly and pragmatically, not as a "mechanical checklist.'" Ambrosia Coal, 368 F.3d at 1332. In addition, "the abstention inquiry must be 'heavily weighted in favor of the exercise of jurisdiction.'" Id. (citing Moses H. Cone Mem. Hosp., 460 U.S. at 16).

In this case, the first factor is inapplicable as neither the state nor federal court has jurisdiction over any property at issue. The second factor, the inconvenience of the federal forum, is disputed by the parties. This second factor examines whether there is "any contention that the federal forum [is] any less convenient to the parties than the state forum," Moses H. Cone Mem'l Hosp., 460 U.S. at 19, and focuses on the "physical proximity of the federal forum to the evidence and witnesses." Am. Bankers Ins. Co., 891 F.2d at 885 (quoting Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1191 (5th Cir. 1988)); see also Kelly Inv., Inc. v. Continental Common Corp., 315 F.3d 494, 498 (5th Cir. 2002) (noting the inconvenience factor "should be analyzed as to whether the inconvenience of the federal forum is so great that abstention is warranted.") (internal quotation omitted). Relevant considerations are where the suits are pending, where the evidence or witnesses are located, and the availability of compulsory process. Evanston Ins. Co., 844 F.2d at 1191 (5th Cir. 1988).

Great American contends that Alabama is a wholly inconvenient forum as all parties and witnesses, except Plaintiff, are located outside this district, and the Agreement at issue was entered into in Tennessee. (Doc. 7). According to Great American, Alabama has no connection to the dispute as Plaintiff only recently relocated to this district. (Id.) Plaintiff, however, contends that Alabama is a convenient forum to litigate this dispute because he is domiciled here and Great American does business in Alabama and should reasonably expect to be hailed into court here. (Doc. 14).

The Court finds that the second factor is neutral. In this case, the state forum and the federal forum are located in two completely different states and are a distance from one another. Great American contends that Nashville is a more convenient forum because the parties' Agreement was executed in Nashville, Tennessee, Plaintiff's employment records are located at Great American's headquarters in Nashville, and that to the best of its knowledge, none of its employees with information about the parties' dispute live or regularly work in Alabama. Plaintiff contends that Alabama is as convenient a forum as Nashville because while employed with Great American, he lived and worked in North Carolina, that many of his witnesses are located in the Southeast (Florida and North Carolina) and that he will pay the

costs for said witnesses to travel to Alabama for trial as necessary.

Based upon the record before the Court, it is not at all clear where the majority of the witnesses are located. While Great American contends that the contract was executed in Tennessee and that the employment documents are maintained there, it has not indicated where the majority of the witnesses with knowledge of the parties' dispute are located. Likewise, Plaintiff indicates that his witnesses reside in the Southeast, including North Carolina, but he has not indicated exactly where these witnesses are located. The undersigned finds that where the contract was executed in one place, Nashville, and Plaintiff was assigned duties in an altogether different location, North Carolina, information regarding the location of the majority of the witnesses expected to be utilized in this case is necessary in order to determine whether this forum is inconvenient. To the extent the majority of witnesses are located in North Carolina, then it would appear that neither Tennessee nor Alabama would be more convenient as the witnesses would need to travel in order to reach either forum. Accordingly, based on the record before the Court, the undersigned finds that this factor is neutral for purposes of this abstention analysis.

The third factor focuses on piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider

the same issue, thereby duplicating efforts and possibly reaching different results." Gannett Co. v. Clark Constr. Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) (quoting Am. Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)); see also Moses H. Cone Mem'l Hosp., 460 U.S. at 19 (noting that this was "[b]y far the most important factor" in Colorado River). The Eleventh Circuit has rejected arguments that abstention based on a fear of "piecemeal litigation" should be triggered simply because both cases deal with, for example, the validity of the same agreement. In Ambrosia, the Eleventh Circuit stressed that the piecemeal litigation factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Ambrosia Coal, 368 F.3d at 1333. Thus, while there is destined to be some duplication of effort and potentially piece-by-piece litigation whenever state and federal litigation are allowed to proceed on parallel tracks, it is only where this factor reaches the level of "abnormally excessive or deleterious" that it tilts in favor of abstention. See Mobile County Water, Sewer and Fire Protection Auth., Inc. v. Mobile Area Water and Sewer Sys., 2007 U.S. Dist. LEXIS 63591 at *13 n.8 (S.D. Ala. Aug. 27, 2007)("Simply because the issues at stake in this case are being litigated by public entities, relate to matters of public concern and might affect many people

says nothing about whether the burdens created by piecemeal litigation will be excessively onerous or harmful here.")

In this case, there is little doubt that there will be some duplication of effort and potentially piece-by-piece decision making if the state and federal lawsuits are allowed to proceed on parallel tracks. Great American contends, and Plaintiff does not dispute, that pursuant to the parties' forum selection clause, Tennessee state law controls the parties' disputes. Thus, with both forums applying Tennessee state law, the possibility of inconsistent results should not be as much of an issue. Accordingly, the undersigned finds that while concurrent state and federal suits may lead to some "repetition of efforts", Great American has not shown that there is a greater risk of piecemeal litigation than that which exists "in the majority [of] federal cases with concurrent state counterparts." Ambrosia Coal, 368 F.3d at 1333.

The fourth factor, the order in which jurisdiction obtained and the relative progress of the two actions, focuses not on which complaint was filed first, but on "how much progress had been made in the two actions." See Moses H. Cone Mem'l Hosp., 460 U.S. at 21-22; Ambrosia Coal, 368 F.3d at 1333. Like the other Colorado River factors, this factor should be applied pragmatically and flexibly. It appears that this case involved a race to the courthouse with both sides poised to file on the

same day. The Tennessee action was filed a mere hours before the Complaint was filed in this Court. According to Great American, both cases are in their infancy and no discovery has been filed in either action.[4]  Accordingly, the Court finds that there has not been considerable progress made in either action; thus, this factor is neutral and weighs neither for nor against abstention.

With respect to the fifth Colorado River factor, whether federal or state law controls, there is no dispute that state law controls this action. There are no federal law claims in this case, and this Court's jurisdiction is based on diversity of citizenship and governed by state substantive law. Additionally, the forum selection clause also contains a choice of law provision and states that the law of Tennessee will be used to interpret and enforce the Agreement. Thus, this factor weighs in favor of a stay.

Finally, the Eleventh Circuit has stated that the sixth factor "will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." Ambrosia Coal, 368 F.3d at 1334. In other words, the adequacy of each forum to protect the rights of the parties, is either a neutral

---

[4] Great American recently filed a Notice updating the Court regarding the Tennessee action. The Tennessee state court issued a recent order denying Plaintiff Brigman's motion to dismiss the state action, and in doing so, upheld the enforceability of the parties' forum selection clause. (Doc. 25).

factor, or a factor that weighs against abstention. See Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1193 (5th Cir. 1988). Plaintiff does not argue that the Nashville state forum is not adequate to protect his rights, but affirmately asserts that this Court is adequate to protect Great American's rights. (Doc. 12 at 12). Nothing in the record indicates that either the Nashville state forum or this Court is an inadequate vehicle for protecting the parties' rights. "Precedent reflects that this factor does not favor abstention where there is no suggestion that one or the other court could not protect the rights of all parties". Mobile County Water, 2007 U.S. Dist. LEXIS 63591 at *20 (citation omitted). Accordingly, this factor weighs against abstention.

In sum, based upon careful consideration of the Colorado River factors and the binding authority construing and applying same, including the required heavy bias in favor of exercising jurisdiction, the undersigned concludes that this is not one of those "limited" or "exceptional" cases which warrants abstention. Thus, Great American's request that this Court abstain from this action should be denied.

## C.   Motion to Transfer

As an alternative to dismissal or stay, Great American requests that this case be transferred to the U.S. District Court for the Middle District of Tennessee. As support for its

request, Great American notes that the parallel state action is pending in Nashville, which is located in the Middle District of Tennessee. Great American also asserts that none of the events giving rise to the disputes occurred in this district, that none of the parties or witnesses, aside from Plaintiff, reside in this district, and that the parties contractually agreed that the disputes arising from their Agreement would be brought in Tennessee. (Doc. 7 at 13). In opposing Great American's request, Plaintiff does not argue that Tennessee is an inconvenient forum, but instead argues that Alabama is not an inconvenient forum, that he will pay any travel expenses necessary to bring witnesses to Mobile, and that his "financial ability to litigate this matter in Tennessee would be much more burdensome than the Defendant's financial ability to litigate this matter in the Southern District of Alabama. (Doc. 14 at 8-9)

28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) vests discretion in the district court to adjudicate motions for transfer on an "'individualized, case-by-case consideration of convenience and fairness.'" Stewart, 487 U.S. at 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622,

84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)); Lasalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003). As a general matter, "[t]he burden is on the moving party to prove that a case should be transferred." Irwin v. Zila, Inc., 168 F. Supp.2d 1294, 1296 (M.D. Ala. 2001); see also In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

To prevail, the moving party must show that there is an adequate alternative forum available, that the public and private factors favor transfer, and that the plaintiff can litigate in the alternative forum without undue inconvenience or prejudice. Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001). The public and private factors have been identified as:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel, 430 F.3d at 1135 n.1 (citation omitted).

The initial question before the Court is whether this case could originally have been brought in the United States District Court for the Middle District of Tennessee. Then, the Court must decide whether the convenience of the parties and witnesses, and the interest of justice, would be served by transferring this case to Tennessee. C.M.B. Foods, Inc. v. Corral of Middle, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005); § 1404(a). In this case, there is no question that this action could have been brought in the Middle District of Tennessee.  As previously noted, the parties' Agreement contains a forum selection clause which provides that Plaintiff consents to the venue and jurisdiction of courts located in Nashville, Tennessee.  Even in the absence of the clause, this action could have been brought in the Middle District of Tennessee.  The record reflects that Great American has its headquarters in Nashville, Tennessee, that Plaintiff is an Alabama resident, and that the amount in controversy exceeds $ 75,000. Thus, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Because diversity is the only basis for federal jurisdiction in this case, venue is governed by § 1391(b), which provides, in relevant part:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,

> or a substantial part of property that is
> the subject of the action is situated....

28 U.S.C. § 1391(b).

As noted supra, Great American has its headquarters in Nashville, Tennessee, which is located within the Middle District of Tennessee. Moreover, Plaintiff does not dispute that the parties' Agreement was executed in Nashville, and that on occasion, while employed with Great American, he traveled to Nashville for business meetings. Because this case meets both of the requirements set forth in § 1391, it could have been filed in the Middle District of Tennessee. See, e.g., Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003). Accordingly, the first step of the § 1404(a) analysis is satisfied.

Turning to the second step, the Court must determine whether the convenience of the parties and witnesses and the interest of justice require that this dispute be transferred. "'[C]ourts have recognized that, aside from the plaintiff's own choice of forum, the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of witnesses.'" Baker v. RBS Wordplay, Inc., 2010 U.S. Dist. LEXIS 110145 (S.D. Ala. Oct. 15, 2010). See also Merswin v. Williams Cos., 2009 U.S. Dist. LEXIS 130658, *17 (N.D. Ga. Jan. 5, 2009). When considering this factor, courts place a premium on specific

information concerning the identity and location of the affected witnesses and the significance of their potential testimony. Baker, 2010 U.S. Dist. LEXIS 110145, at *16.

In its brief, Great American asserts that a "substantial number of witnesses" are located in the Middle District and that customers serviced by Plaintiff during his employment are located in North Carolina, as opposed to Alabama. In Plaintiff's brief, he asserts that he anticipates utilizing witnesses located in North Carolina, Florida, and other parts of Alabama. Aside from the arguments in their briefs, the parties have not submitted any sworn testimony regarding the witnesses who are expected to be utilized in this case. Additionally, they have not indicated the number of witnesses who will likely be utilized, have not identified any of the potential witnesses, and have not provided any information regarding the nature of their testimony. Under normal circumstances, this sketchy information would not suffice to weigh for or against transfer. However, as noted supra, there is pending in Nashville state court a parallel action involving the same parties and near identical claims. Rather than forcing potential witnesses, particularly those located in North Carolina and Florida, to travel to Nashville *and* Alabama in connection with these cases, it would arguably be more convenient for these witnesses if both cases were litigated in the same city. That way, discovery

could be coordinated, and the witnesses would not have to travel to two different states for depositions. Accordingly, the undersigned finds that the Middle District of Tennessee would be more convenient for the majority of the potential witnesses.

The next factor for consideration is Plaintiff's choice of forum. Typically, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). This is particularly true "if the forum is in the district in which [Plaintiff] resides." LaSalle Bank N.A., 274 F. Supp. 2d at 1301. Moreover, courts have recognized that "where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'" Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (citation omitted). However, a plaintiff's choice of forum becomes less persuasive where a plaintiff has entered into a contract containing a forum selection clause. In Wamstad v. Haley Constr., Inc., 2009 U.S. Dist. LEXIS 55053 (S.D. Ala. June 29, 2009), the Court observed as follows:

> [W]ithin the framework of a section 1404(a) analysis, the forum selection clause evidences the parties' preference regarding a convenient forum. Although such clauses are not dispositive, the Stewart court noted that their presence in a contract is a significant factor that [should figure]

31

> centrally in the district court's calculus
> of the above mentioned case-specific
> factors.

Wamstad v. Haley Constr., Inc., 2009 U.S. Dist. LEXIS 55053 at *10 (citation and quotation marks omitted).

Plaintiff indicates that although he previously resided in North Carolina, he is domiciled in Mobile, Alabama, and that he would be unduly burdened if forced to litigate this case in Tennessee. Great American, on the other hand, argues that the parties' forum selection clause should be enforced. Great American also asserts that the parties' Agreement was executed in Nashville, that Defendant is headquartered in Nashville, and that the corporate employees involved in Plaintiff's hiring are located in Nashville. Given the existence of the forum selection clause, the undersigned finds that Plaintiff's choice of forum is less persuasive.

Another factor to consider is the ease of access to the sources of proof and the location of the relevant documents. Great American asserts that the records pertaining to Plaintiff's employment are maintained at its headquarters in Nashville; however, "[c]onsidering the relative ease of transporting and exchanging documents in today's world," the location of documents is not a significant factor in this case. Wamstad, 2009 U.S. Dist. LEXIS 55053 at *8-9.

Additionally, as noted supra, there is no dispute that the parties' Agreement was executed in Nashville, and that while employed with Defendant, Plaintiff, from time to time, traveled to Nashville for business meetings. Thus, it would appear that the locus for many of the operative facts is Nashville, which is located within the Middle District of Tennessee. In addition, the parties' Agreement provides that it will be governed in accordance with the laws of Tennessee. While this Court is capable of applying Tennessee law, there is no doubt that a Tennessee district court would be more familiar with the governing law. <u>Wamstad</u>, 2009 U.S. Dist. LEXIS 55053 at *8. Finally, while Plaintiff contends that his financial burden will be greater if he is forced to litigate his claims in Tennessee, his assertion is flawed for a couple of reasons. First, Plaintiff has represented to the court that he has the financial ability to pay for witnesses to travel to Alabama for depositions. Thus, it would seem that if Plaintiff has the means to pay for witnesses to travel to Alabama, he can likewise pay for them to travel to Tennessee. Moreover, regardless of whether this case is transferred to the Middle District of Tennessee or not, Plaintiff will nevertheless incur the cost of litigating in Tennessee because the parallel action is pending in state court in Nashville. As noted supra, having both cases litigated within the same city will lessen the burden of non-party

witnesses traveling from places such as North Carolina and Florida, and can result in time and money savings for the parties if they are able to coordinate discovery in the two actions.

In consideration of the evidence presented and the relevant case law, this Court finds that the evidence submitted by the parties shows that for the convenience of parties and witnesses, and in the interest of justice, this case should be transferred to the Middle District of Tennessee.

## IV. Conclusion

For the reasons set forth herein, and upon careful consideration of the record, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, to Abstain from Consideration of this Case, or to Transfer Venue to the Middle District of Tennessee be granted in part, and denied in part. The motion should be denied to the extent it seeks dismissal or abstention, and should be granted to the extent it seeks the transfer of this action to the Middle District of Tennessee.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **5th** day of **January, 2012**.


_____/s/ SONJA F. BIVINS_____
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection.*   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.    Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.